JS 44  (Rev. 06/17)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

JAMES CARPENTER

## DEFENDANTS

CITY OF PHILADELPHIA AND LAWRENCE S. KRASNER

**(b)** County of Residence of First Listed Plaintiff  Silver Springs, MD
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant  Philadelphia, PA
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Sidney L. Gold, Esquire, I.D. NO.: 21374
Sidney L. Gold & Assoc., P.C.
1835 Market St., Suite 515 Phila., PA 19103 215-569-1999

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1  U.S. Government
Plaintiff

☒ 3  Federal Question
*(U.S. Government Not a Party)*

☐ 2  U.S. Government
Defendant

☐ 4  Diversity
*(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)* *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☒ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - | ☐ 690 Other | ☐ 423 Withdrawal | ☐ 376 Qui Tam (31 USC |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Product Liability | | 28 USC 157 | 3729(a)) |
| ☐ 140 Negotiable Instrument | Liability | ☐ 367 Health Care/ | | | ☐ 400 State Reapportionment |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Pharmaceutical | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| & Enforcement of Judgment | Slander | Personal Injury | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted | Liability | ☐ 368 Asbestos Personal | | ☐ 835 Patent - Abbreviated | ☐ 460 Deportation |
| Student Loans | ☐ 340 Marine | Injury Product | | New Drug Application | ☐ 470 Racketeer Influenced and |
| (Excludes Veterans) | ☐ 345 Marine Product | Liability | | ☐ 840 Trademark | Corrupt Organizations |
| ☐ 153 Recovery of Overpayment | Liability | **PERSONAL PROPERTY** | **LABOR** | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | ☐ 371 Truth in Lending | Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ |
| ☐ 190 Other Contract | Product Liability | ☐ 380 Other Personal | ☐ 720 Labor/Management | ☐ 863 DIWC/DIWW (405(g)) | Exchange |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Property Damage | Relations | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | ☐ 385 Property Damage | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| | ☐ 362 Personal Injury - | Product Liability | ☐ 751 Family and Medical | | ☐ 893 Environmental Matters |
| | Medical Malpractice | | Leave Act | | ☐ 895 Freedom of Information |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | Act |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Employee Retirement | ☐ 870 Taxes (U.S. Plaintiff | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | Income Security Act | or Defendant) | ☐ 899 Administrative Procedure |
| ☐ 230 Rent Lease & Ejectment | ☒ 442 Employment | ☐ 510 Motions to Vacate | | ☐ 871 IRS—Third Party | Act/Review or Appeal of |
| ☐ 240 Torts to Land | ☐ 443 Housing/ | Sentence | | 26 USC 7609 | Agency Decision |
| ☐ 245 Tort Product Liability | Accommodations | ☐ 530 General | | | ☐ 950 Constitutionality of |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 535 Death Penalty | **IMMIGRATION** | | State Statutes |
| | Employment | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 446 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration | | |
| | Other | ☐ 550 Civil Rights | Actions | | |
| | ☐ 448 Education | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - | | | |
| | | Conditions of | | | |
| | | Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1 Original
Proceeding

☐ 2 Removed from
State Court

☐ 3 Remanded from
Appellate Court

☐ 4 Reinstated or
Reopened

☐ 5 Transferred from
Another District
*(specify)*

☐ 6 Multidistrict
Litigation -
Transfer

☐ 8 Multidistrict
Litigation -
Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
Age Discrimination In Employment Act (ADEA)
Brief description of cause:
Employment Discrimination

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION
UNDER RULE 23, F.R.Cv.P.

DEMAND $
150,000.00

CHECK YES only if demanded in complaint:
JURY DEMAND:  ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*
JUDGE  Pratter (GEKP)   DOCKET NUMBER  19-4039

DATE
02/19/2020

SIGNATURE OF ATTORNEY OF RECORD
/s/ SIDNEY L. GOLD, ESQUIRE

FOR OFFICE USE ONLY

RECEIPT #_____  AMOUNT_____  APPLYING IFP_____  JUDGE_____  MAG. JUDGE_____

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

DESIGNATION FORM
*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: _____ 8560  2nd Avenue,  Silver Springs, MD 20910 _____

Address of Defendant: ___ District Attorney's Office, Three  South Penn Square, Phila., PA 19107 (same address for both Defs.) ___

Place of Accident, Incident or Transaction: ___ District Atty's Office, Three South Penn Sq., Phila., PA 19107 ___

---

**RELATED CASE, IF ANY:**

Case Number: _____ 19-4039 _____   Judge: _____ Pratter (GEKP) _____   Date Terminated: _____

Civil cases are deemed related when *Yes* is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?   Yes ☐   No ☑

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?   Yes ☑   No ☐

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action of this court?   Yes ☐   No ☑

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?   Yes ☐   No ☑

I certify that, to my knowledge, the within case ☑ is / ☐ is not  related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: 02/19/2020 _____   /s/ Sidney L. Gold, Esq. _____   21374 _____
_____   *Attorney-at-Law / Pro Se Plaintiff*   *Attorney I.D. # (if applicable)*

---

**CIVIL:** (Place a √ in one category only)

**A.** *Federal Question Cases:*

- ☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts
- ☐ 2. FELA
- ☐ 3. Jones Act-Personal Injury
- ☐ 4. Antitrust
- ☐ 5. Patent
- ☐ 6. Labor-Management Relations
- ☑ 7. Civil Rights
- ☐ 8. Habeas Corpus
- ☐ 9. Securities Act(s) Cases
- ☐ 10. Social Security Review Cases
- ☐ 11. All other Federal Question Cases
  *(Please specify):* _____

**B.** *Diversity Jurisdiction Cases:*

- ☐ 1. Insurance Contract and Other Contracts
- ☐ 2. Airplane Personal Injury
- ☐ 3. Assault, Defamation
- ☐ 4. Marine Personal Injury
- ☐ 5. Motor Vehicle Personal Injury
- ☐ 6. Other Personal Injury *(Please specify):* _____
- ☐ 7. Products Liability
- ☐ 8. Products Liability – Asbestos
- ☐ 9. All other Diversity Cases
  *(Please specify):* _____

---

**ARBITRATION CERTIFICATION**
*(The effect of this certification is to remove the case from eligibility for arbitration.)*

I, ___ SIDNEY L. GOLD, ESQUIRE ___ , counsel of record *or pro se plaintiff*, do hereby certify:

☑ Pursuant to Local Civil Rule 53.2, § 3(c) (2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs:

☑ Relief other than monetary damages is sought.

DATE: 02/19/2020 _____   /s/ Sidney L. Gold, Esq. _____   21374 _____
_____   *Attorney-at-Law / Pro Se Plaintiff*   *Attorney I.D. # (if applicable)*

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

*Civ 609 (5 2018)*

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**DESIGNATION FORM**
*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: ___8560  2nd Avenue,  Silver Springs, MD 20910___

Address of Defendant: ___District Attorney's Office, Three  South Penn Square, Phila., PA 19107 (same address for both Defs.)___

Place of Accident, Incident or Transaction: ___District Atty's Office, Three South Penn Sq., Phila., PA 19107___

---

*RELATED CASE, IF ANY:*

Case Number: ___19-4039___   Judge: ___Pratter (GEKP)___   Date Terminated: _____

Civil cases are deemed related when *Yes* is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?   Yes ☐   No ☑

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?   Yes ☑   No ☐

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action of this court?   Yes ☐   No ☑

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?   Yes ☐   No ☑

I certify that, to my knowledge, the within case ☑ is / ☐ is not  related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: ___02/19/2020___   ___/s/ Sidney L. Gold, Esq.___   ___21374___
_Attorney-at-Law / Pro Se Plaintiff_   _Attorney I.D. # (if applicable)_

---

**CIVIL: (Place a √ in one category only)**

**A.**   *Federal Question Cases:*

☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts
☐ 2. FELA
☐ 3. Jones Act-Personal Injury
☐ 4. Antitrust
☐ 5. Patent
☐ 6. Labor-Management Relations
☑ 7. Civil Rights
☐ 8. Habeas Corpus
☐ 9. Securities Act(s) Cases
☐ 10. Social Security Review Cases
☐ 11. All other Federal Question Cases
   *(Please specify):* _____

**B.**   *Diversity Jurisdiction Cases:*

☐ 1. Insurance Contract and Other Contracts
☐ 2. Airplane Personal Injury
☐ 3. Assault, Defamation
☐ 4. Marine Personal Injury
☐ 5. Motor Vehicle Personal Injury
☐ 6. Other Personal Injury *(Please specify):* _____
☐ 7. Products Liability
☐ 8. Products Liability -- Asbestos
☐ 9. All other Diversity Cases
   *(Please specify):* _____

---

**ARBITRATION CERTIFICATION**
*(The effect of this certification is to remove the case from eligibility for arbitration.)*

I, ___SIDNEY L. GOLD, ESQUIRE___, counsel of record *or pro se plaintiff,* do hereby certify:

☑ Pursuant to Local Civil Rule 53.2, § 3(c) (2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs;

☑ Relief other than monetary damages is sought.

DATE: ___02/19/2020___   ___/s/ Sidney L. Gold, Esq.___   ___21374___
_Attorney-at-Law / Pro Se Plaintiff_   _Attorney I.D. # (if applicable)_

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

## IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

### CASE MANAGEMENT TRACK DESIGNATION FORM

| | | |
|---|---|---|
| JAMES CARPENTER | : | CIVIL ACTION |
| | : | |
| v. | : | |
| CITY OF PHILADELPHIA | : | |
| AND LAWRENCE S. KRASNER | : | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.)  In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

### SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.　　　　　　　( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health
　　and Human Services denying plaintiff Social Security Benefits.　　　　　　　　　　　　( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.　( )

(d) Asbestos – Cases involving claims for personal injury or property damage from
　　exposure to asbestos.　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are
　　commonly referred to as complex and that need special or intense management by
　　the court.  (See reverse side of this form for a detailed explanation of special
　　management cases.)　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.　　　　(☑)


| | | |
|---|---|---|
| 02/19/2020 | /s/ Sidney L. Gold, Esq. | PLAINTIFF |
| **Date** | **Attorney-at-law** | **Attorney for** |
| (215) 569-1999 | (215) 569-3870 | sgold@discrimlaw.net |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

## IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JAMES CARPENTER** | : | **CIVIL ACTION** |
| **Silver Springs, MD 20910** | : | |
| **Plaintiff** | : | **NO.** |
| | : | |
| **v.** | : | **JURY TRIAL DEMANDED** |
| | : | |
| **CITY OF PHILADELPHIA** | : | |
| **Philadelphia, PA 19107** | : | |
| **and** | : | |
| **LAWRENCE S. KRASNER** | : | |
| **Philadelphia, PA 19107** | : | |
| **Defendants** | : | |

## COMPLAINT

### I.   PRELIMINARY STATEMENT

Plaintiff, James Carpenter ("Plaintiff Carpenter"), brings this action alleging age discrimination against his former employer, the City of Philadelphia (the "City") and Lawrence S. Krasner ("Defendant Krasner"), who currently serves as District Attorney for the City.  This action is brought pursuant to the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. §621 et seq. ("ADEA"), and the Pennsylvania Human Relations Act, as amended, 43 P.S. §§951 et seq. ("PHRA").  Plaintiff Carpenter had a long, successful and distinguished career with the City as a Prosecutor in the City's District Attorney's Office ("DA's Office"), which spanned more than twenty (20) years, until the City and Defendant Krasner (collectively, "Defendants") caused Plaintiff to be involuntarily terminated from his employment with the City in January of 2018.  From

1

2000 until 2006, Plaintiff Carpenter worked as a Prosecutor in the Family Violence & Sexual Assault Unit of the DA's Office, at which time he was promoted to Assistant Chief of said Unit. In 2012, the City again promoted Plaintiff Carpenter to the role of Chief of the Family Violence & Sexual Assault Unit, a position he held until his unlawful termination in January of 2018. In January of 2018, Plaintiff Carpenter's age was 53. Prior to being terminated by Defendants, Plaintiff Carpenter intended to continue working for the City for years to come.

In February 2017, Defendant Krasner announced his candidacy for District Attorney ("DA") of the City. Throughout the course of his campaign for DA, Defendant Krasner made a series of public statements that reflected his strong bias against and stereotypical views of older Prosecutors, and his unwavering preference and affinity for young Prosecutors. Defendant Krasner even declared publicly that if he were elected, he would fire older Prosecutors and replace them with young Prosecutors. On November 7, 2017, Defendant Krasner won the election for District Attorney, and on January 2, 2018, he was sworn into office as the City's new DA. Three days later, on January 5, 2018, Defendant Krasner directed that a number of Assistant District Attorneys ("ADAs") in the DA's Office, including Plaintiff Carpenter, be informed that day that he was demanding his resignation effective January 12, 2018; that he was not to return to work after January 5, 2018; and that if he refused to resign, he would be fired with an effective date of January 5, 2018. Consistent with Defendant Krasner's discriminatory plan and directive, Plaintiff Carpenter was informed by the City on January 5, 2018 that he had the Hobson's choice of either resigning or being fired. Plaintiff Carpenter was given no

2

explanation for why he was being forced out, and Defendant Krasner never contacted or met with him to give him a reason.  When Plaintiff Carpenter refused to tender his resignation on January 5, 2018, he was instructed by the City to clear out his office that day and was escorted out of the building.  Under threat of immediate termination, Plaintiff Carpenter complied with Defendants' order and submitted his forced resignation by email on January 9, 2018, effective January 12, 2018, after 22 years of loyal and dedicated service.  After he was evicted by the City, Plaintiff Carpenter was replaced by or had his cases reassigned to substantially younger, less experienced Prosecutors who were not as qualified as Plaintiff Carpenter.  After assuming office, Defendant Krasner continued to make public remarks that revealed his antipathy toward older Prosecutors and his partiality for young Prosecutors; and since taking office as District Attorney, he has hired many young Prosecutors, a large number of whom are recent law school graduates.

The age of Plaintiff Carpenter was a determinative and motivating factor in Defendants' decision which caused Plaintiff Carpenter's employment with the City to be terminated.  To remedy the acts of age discrimination alleged herein, Plaintiff Carpenter seeks relief in the form of monetary damages for past and future lost wages; reinstatement as an alternative to future lost wages; liquidated damages under the ADEA; compensatory damages under the PHRA for emotional distress, harm to reputation, and other non-economic harm; attorney's fees and costs; and other affirmative relief.

## II.   PARTIES

1.      Plaintiff Carpenter is an adult individual residing in Silver Springs, Maryland, who was born on July 13, 1964 and is presently 55 years of age.

2.      The City is a municipality and political subdivision of the Commonwealth of Pennsylvania, with municipal offices, including the DA's Office, located at Three South Penn Square, Philadelphia, Pennsylvania 19107.

3.      At all relevant times, the City acted through its agents, servants and employees, acting within the scope of their authority, in the course of their employment, and in furtherance of the City's mission, business and affairs.

4.      The City is and at all relevant times has been an "employer" within the meaning of the ADEA and the PHRA.

5.      At all relevant times, the City has employed a sufficient number of employees to subject it to the provisions and requirements of the ADEA and the PHRA.

6.      Defendant Krasner is an adult individual and citizen residing in Philadelphia, Pennsylvania, who has served as District Attorney for the City from January 2, 2018 to the present, and whose office is located at Three South Penn Square, Philadelphia, Pennsylvania 19107.

## III.   JURISDICTION, VENUE AND COMPLIANCE WITH ADMINISTRATIVE PROCEDURES

7.      This Court has jurisdiction over Plaintiff Carpenter's claims arising under the ADEA pursuant to 28 U.S.C. §1331 and 29 U.S.C. §626(c)(1).

8.      This Court has supplemental jurisdiction over Plaintiff Carpenter's claims arising under the PHRA pursuant to 28 U.S.C. §1367(a).

9.      Venue is proper in this judicial district pursuant to 28 U.S.C. §1391(b) because Defendants reside in this district, and all or a substantial part of the events and occurrences giving rise to Plaintiff Carpenter's claims occurred here.

10.     On June 29, 2018, Plaintiff Carpenter timely filed a Complaint against Defendants with the Pennsylvania Human Relations Commission ("PHRC"), in which he complained of the acts and practices of age discrimination alleged herein ("Plaintiff Carpenter's PHRC Complaint").

11.     On or about June 29, 2018, Plaintiff Carpenter's PHRC Complaint was cross-filed with the Equal Employment Opportunity Commission ("EEOC").

12.     All conditions precedent to the institution of this suit have been fulfilled. On November 21, 2019, a Notice of Right to Sue was issued by the EEOC, and this action has been filed within ninety (90) days of receipt of said notice.   More than one year has passed since the filing of Plaintiff Carpenter's Complaint with the PHRC.

13.     Plaintiff Carpenter has satisfied all other jurisdictional prerequisites to the maintenance of this action.

## IV.   **STATEMENT OF FACTS**

### A.     **Plaintiff Carpenter's Credentials and Professional Background**

14.     Plaintiff Carpenter has been a member in good standing of the Pennsylvania Bar for 29 years.  Over the course of his career, Plaintiff Carpenter has

demonstrated outstanding trial advocacy, extensive investigative skills, strong problem solving acumen, and excellent legal research and management skills.

15.    In 1990, Plaintiff Carpenter graduated from The University of Pennsylvania Law School in the top twenty-five percent of his class.  Thereafter, Plaintiff Carpenter entered into private practice with the law firm of White and Williams.  In 1991, Plaintiff Carpenter joined the law firm of Clark Ladner Fortenbaugh & Young and practiced in the Litigation Unit.

**B.    Plaintiff Carpenter's Employment History and Performance with the City**

16.    In July 1995, Plaintiff Carpenter was hired by the City as an Appellate Attorney at the Philadelphia DA's Office.  Plaintiff Carpenter began what was to become a long and heralded career as an employee in the DA's Office that spanned more than 20 years, until his employment was abruptly terminated on January 12, 2018.

17.    In 1998, the City assigned Plaintiff Carpenter to the Post Conviction Relief Unit, where he conducted extensive evidentiary hearings on allegations of counsel ineffectiveness and after-discovered evidence.

18.    Because of Plaintiff Carpenter's record of outstanding performance, in 2000, the City promoted Plaintiff Carpenter to a Prosecutor position in the Family Violence & Sexual Assault Unit, where he was responsible for prosecuting cases, conducting additional investigations to build successful prosecutions, writing and litigating pre-trial and post-trial motions, and appearing in court every day for trials, hearings, and sentencings.

19.     As a Prosecutor in the Family Violence & Sexual Assault Unit, Plaintiff Carpenter prosecuted more than 40 jury trials and hundreds of bench trials to verdict. Plaintiff Carpenter prosecuted cases of sexual assault and physical abuse of children, sexual assaults of adults, and felony domestic violence.

20.     In 2006, the City promoted Plaintiff Carpenter to the position of Assistant Chief of the Family Violence and Sexual Assault Unit.  In this role, Plaintiff Carpenter was responsible for overseeing a Unit comprised of a team of approximately 18 Prosecutors and 12 Detectives, Victim-Witness Coordinators, and Paralegals.  Plaintiff Carpenter also provided legal and investigative guidance to over 50 Detectives in the Philadelphia Police Department's Special Victims Unit during this time, as well as continued to prosecute cases.

21.     Because of Plaintiff Carpenter's record of outstanding performance, in 2012, the City promoted Plaintiff Carpenter to the role of Chief of the Family Violence & Sexual Assault Unit.

22.     In that capacity, Plaintiff Carpenter successfully managed the prosecution of all sexual assault, child abuse and felony domestic violence cases in the City.  He supervised a staff of approximately 18 Prosecutors and a total staff of 30.  Additionally, Plaintiff Carpenter supervised investigations and made prosecution decisions on all Internal Affairs investigations of Philadelphia Police Officers accused of domestic violence or sexual assault crimes.  He also drafted legislation for the Pennsylvania Legislature and sat on numerous task forces and committees working to more effectively address and reduce domestic violence, child abuse, and human trafficking.  This included

serving as Co-Chairperson of the Domestic Violence Law Enforcement Committee, Alternate Chairperson of the Act 33 Task Force on Child Fatalities and Near-Fatalities, and as a member of the Philadelphia Children's Alliance Programming Committee, Philadelphia Anti-Human Trafficking Task Force, Philadelphia Sexual Assault Committee, Sexual Assault Mapping Committee, National Child Abuse Committee, and the Department of Human Services Police Department and District Attorney Working Group.  Plaintiff Carpenter also continued to try cases in his role as Chief.

23.     During his employment with the City, Plaintiff Carpenter contributed to many presentations and publications for the Pennsylvania Conference of Common Pleas Judges, the Pennsylvania Bar Institute, the National District Attorneys Association – National Center for the Prosecution of Child Abuse, Seminars for Judges in the Pennsylvania Criminal Court System, WHYY – Radio Times, and the Pennsylvania Sexual Violence Benchbook.

24.     Throughout his 22 year career in the DA's Office, Plaintiff Carpenter consistently performed his job responsibilities in a highly competent manner.

25.     At no time during the course of his long career with the City did Plaintiff Carpenter receive any disciplinary action.

**C.     Public Age-Biased Comments Made by Defendant Krasner While He Ran for District Attorney**

26.     In or about February of 2017, Defendant Krasner announced his candidacy for District Attorney of the City, with the election to be held on November 7, 2017.

27.     After announcing his candidacy for District Attorney, Defendant Krasner

proceeded to make a series of public statements that revealed his personal hostility

toward older Prosecutors who had worked in the DA's Office for many years, a category

into which Plaintiff Carpenter neatly fit.

28.     Defendant Krasner's public pronouncements made during his campaign

touted his fondness and affinity for young Prosecutors, and revealed his plan to fire older

Prosecutors if he were elected District Attorney so that he could replace them with the

young Prosecutors he much preferred.

29.     One glaring example of Defendant Krasner's ageism surfaced on May 16,

2017, when he gave an interview to "The Intercept" and made the following statements

regarding how he intended to restructure the DA's Office to comport with his

preconceived, stereotyped views of older Prosecutors:

> "If you have a truly progressive DA, there's going to be a
> certain portion of the DA's office who can't stand the idea of
> change.  They're going to leave.  There are other people who
> are going to be made to leave because you cannot bring
> about real change and leave people in place who are going
> to fight change every step of the way.  The ones who will
> leave will tend to be my generation, people who started in
> this business 30 years ago, which means they'll also tend
> to be white and male  That results in more openings,
> opportunities for greater diversity, and if we are to judge by
> what's happened in other jurisdictions, the office will become
> a tremendous magnet for new talent, because there are a
> ton of people who are either coming out of law school or who
> are mid-career who would love to work in a truly progressive
> DA's office but haven't been able to find any."

(Emphasis added).

30.     In the interview he gave on May 16, 2017, Defendant Krasner further

explicated his discriminatory views when he stated that "there are a lot of just malleable,

mostly younger attorneys who did what they were told, and always wanted to do the right

thing, and with proper training will do the right thing," and "I think real cultural change is

possible."

31.     As the November 2017 election drew closer, Defendant Krasner gave an

interview to Jacobin Radio on October 7, 2017, wherein he again divulged his obsession

with hiring young Prosecutors and his contempt for older Prosecutors, who he

pigeonholed in the interview as being too rigid and set in their ways, notwithstanding

Plaintiff Carpenter's excellent performance records with the City.

32.     The provocative, age-biased statements that Defendant Krasner made

during the radio interview on October 7, 2017 are quoted below:

> "There is no question that the old guard in that [DA's] office
> is in control and the old guard in that office is not desiring
> change at all.  In fact, one of them went out of his way to say
> that 'there is nothing wrong with this ship, the ship does not
> need to be righted and we do not need an outsider telling us
> what to do.'  Well that crowd needs to go."
>
> "They need to get out of the way and let people who are ex-
> Prosecutors who have been on the other side, let people
> who have a real moral compass about justice and, you know,
> let people who are sophisticated and modern and understanding
> of the mistakes that have been made in the last fifty years.  Let
> them run the show.  And if we can really do that, then I think
> there are those Prosecutors who are open to those ideas and that
> vision than there are new Prosecutors who are going to be coming
> mid-career or straight out of law school. . ."
>
> "There is an old guard there [in the DA's Office] who actually
> thinks Lynne Abraham for 19 years was doing the right thing

when frankly, she almost never did the right thing at all.  You
know, there's that crew, they're very loyal to a particular way
of doing things.  Which is very authoritarian, very unscientific,
very political and they are not only going to resist, they are you
might say in the throes of trying to resist even now.  Those folks
got to go.  I mean some of them are leaving already which is a
good choice and some of them are going to go."

"So, yes, there will be turnover . . . and people whose vision
is incompatible with the progressive vision of the next District
Attorney in Philadelphia, and I hope that person will be me . . .
I mean they will be well-served to find another place to work."

(Emphasis added).

33.     On October 24, 2017, Defendant Krasner gave a radio interview to WHYY,

on a program hosted by Marty Moss-Coane, in which he once again expressed his

partiality for a new generation of young Prosecutors, as well as the prejudicial

generalization – which ignored Plaintiff Carpenter's career accomplishments – that older,

experienced Prosecutors were too intransigent to work in the DA's Office.

34.     For example, in the WHYY interview, Defendant Krasner continued to

typecast young and old Prosecutors, and to ignore the wealth of experience that older

Prosecutors like Plaintiff Carpenter could bring to the table, when he proclaimed:

"So I think what we are going to see is broad support among
a lot of younger ADAs, but we are going to see that there are
some people in there whose vision for a DA's Office is so
entrenched that they are unwilling to embrace a new one.
They have in fact caused the problem which got us where
we are, and that they will be better served working somewhere
else."

"There's a completely different culture in terms of the
education of young Prosecutors who are coming out of
law school as opposed to what we experienced thirty years
ago when we came out of law school.  So I expect to have

> very broad support among the vast majority of the young
> Prosecutors who are in there. It's more of . . . a generational
> issue as I see it."

(Emphasis added).

35. Defendant Krasner gave another radio interview on October 24, 2017, to WURD, in which he again revealed his discriminatory attitudes toward older Prosecutors. For example, when Defendant Krasner was asked by WURD why Philadelphia's former District Attorney, Lynne Abraham, had "lasted so long," he stated that "one explanation would be that they generation of people who identified strongly with Archie Bunker, and I don't mean his likeable side, that generation of people is now aging out."

36. Defendant Krasner's pre-election public statements, when viewed in their entirety, show compellingly that he had unfairly prejudiced older Prosecutors with many years of experience, and was targeting them for the "chopping-block" if he was elected District Attorney.

**D.    Consistent with Defendant Krasner's Previously-Announced
Discriminatory Plan, Defendants Caused Plaintiff Carpenter's
Employment with the City to be Terminated Within Three Days
of Defendant Krasner Being Sworn in as District Attorney**

37. On November 7, 2017, Defendant Krasner won the election for District Attorney of the City, and on Tuesday, January 2, 2018, he was sworn into office as the City's new District Attorney.

38. After taking office, Defendant Krasner wasted no time in implementing his Plan to rid the DA's Office of some of its oldest, most experienced Prosecutors, a category that included Plaintiff Carpenter.

39.     Plaintiff Carpenter, at age 53, was one of the victims of Defendant Krasner's purge of older Prosecutors.

40.     On Friday, January 5, 2018, at Defendant Krasner's direction, Defendant Krasner's recently-appointed Chief of Staff, Arun Prabhakaran ("Prabhakaran"), drafted and sent a memorandum to Rachel Mitchell ("Mitchell"), Human Resources Director for the DA's Office, which identified those ADAs for whom Defendant Krasner "requests the resignations . . . effective Friday, January 12, 2018, with the understanding that they are not to return to work once notified [on] Friday, January 5, 2018" ("January 5, 2018 Memo").

41.     The January 5, 2018 Memo identified Plaintiff Carpenter as among the ADAs whose resignations would be requested on January 5, 2018, and whose last day of work for the City would be January 5, 2018.

42.     On January 5, 2018, the City's offices were closed due to a snowstorm.

43.     Even with the City's offices closed because of the snowstorm, Prabhakaran called Plaintiff Carpenter on January 5, 2018, and instructed him to report to a designated City office that day.

44.     On January 5, 2018, as directed by Prabhakaran, Plaintiff Carpenter went to the office to which he was told to report, and upon his arrival, he was greeted by a police officer who escorted him to the Human Resources ("HR") Department of the DA's Office.

45.     When Plaintiff Carpenter arrived in the DA's Office's HR Department on January 5, 2018, he met with Mitchell, who informed him that Defendant Krasner was

demanding that he resign by January 12, 2018, and that if he refused to resign, his employment would be terminated.  Mitchell gave Plaintiff Carpenter no reason or explanation for this action.

46.    When Plaintiff Carpenter told Mitchell that he refused to resign on January 5, 2018, he was directed to remove all of his personal belongings from his office that day and to then leave the building.

47.    After collecting his personal belongings on January 5, 2018, Plaintiff Carpenter was escorted out of the building.

48.    Under threat of immediate termination, Plaintiff Carpenter complied with Defendants' order and submitted his forced resignation by email on January 9, 2018, effective January 12, 2018, thus ending his prominent 22 year career with the City.

49.    Defendant Krasner never contacted, met with or spoke to Plaintiff Carpenter about Defendants' decision to force him out of his employment with the City after 22 years.

50.    Defendants did not provide Plaintiff Carpenter with any document or correspondence explaining why he was being ousted from his employment with the City after 22 years.

51.    As a result of the Defendants' actions that caused Plaintiff Carpenter's employment with the City to be involuntarily terminated in January 2018, Plaintiff lost the salary payments and benefits he would have received as an ADA; and as a further result of his being forced out of his employment with the City, he has suffered and will

suffer additional economic losses as well as emotional distress, embarrassment, humiliation, loss of self-confidence, loss of self-esteem, and other non-economic losses.

52.     On or about January 5, 2018, consistent with Defendant Krasner's discriminatory stratagem, Defendants also demanded the resignations of other older, long-tenured Prosecutors, who like Plaintiff Carpenter, were advised by the City that they would be fired if they did not resign.

**E.     Defendants Retained Many Much Younger, Less Experienced Prosecutors in the Family Violence & Sexual Assault Unit After Defendants Caused Plaintiff Carpenter's Employment with the City to be Involuntarily Terminated**

53.     After Defendants forced Plaintiff Carpenter out of his employment with the City, Defendants retained in the Family Violence & Sexual Assault Unit, where Plaintiff Carpenter had worked, many substantially younger, less experienced ADA Prosecutors, any of whom should have been asked to resign in lieu of Plaintiff Carpenter (collectively, "Plaintiff Carpenter's Comparators").

54.     Some of Plaintiff Carpenter's Comparators were assigned, took over, and/or assumed Plaintiff Carpenter's former job responsibilities and case files.

55.     Significantly, following Plaintiff Carpenter's unlawful termination, Defendants reassigned Plaintiff Carpenter's duties as Chief of the Family Violence & Sexual Assault Unit to Branwen McNabb ("McNabb"), an approximately 36 year old individual, despite being significantly less qualified and less experienced than Plaintiff Carpenter.

56.     Based on Plaintiff Carpenter's many years of experience as a Prosecutor, as well as his skills, qualifications, performance records, and the high value he offered to the City, Defendants should have retained Plaintiff Carpenter as an employee of the City instead of Plaintiff Carpenter's Comparators.

57.     Defendants' retention of Plaintiff Carpenter's Comparators over Plaintiff Carpenter was consistent and in conformity with Defendant Krasner's previously-announced goal to remove "the old guard" and to transform the DA's Office into a haven for young Prosecutors.

58.     Defendants' actions in retaining Plaintiff Carpenter's Comparators over Plaintiff Carpenter is reflecting of and compatible with Defendant Krasner's typecasting and categorization of older Prosecutors based on his personal biases and prejudices.

F.     **After Plaintiff Carpenter was Forced Out of his Job with the City, Defendant Krasner Continued to Make Age-Biased Remarks About Older Prosecutors and to Boast Publicly About His Preference for Young Prosecutors**

59.     After being sworn in as District Attorney, Defendant Krasner did not halt his practice of making public comments that compared older Prosecutors unfavorably to young Prosecutors.

60.     As one example, on April 18, 2018, Defendant Krasner gave a radio interview to WBUR in which he made the following remarks when asked about generational differences among Prosecutors:

> "I think the younger generation actually really understands these issues, and I see that as they come out of law school, and as I speak to them . . . They have grown up with DNA proving that innocent people end up in jail. They've grown up with an understanding that mass incarceration

is not only a huge problem for a society that claims to be free, <u>but it's
also racist</u>.  These are discussions they've had, and that they're willing
to have.  So I feel like we are actually very strong among a lot
of the prosecutors.

<u>Some of the older ones, I mean let's be honest, it's hard to
look back on your career and think that you were doing a
good thing by stuffing so many people of color in jail</u>.  It's hard
to look back on that and say, "I guess I dedicated my life
to doing something that's kinda negative."

(Emphasis added).

61.     Painting with a broad brush and speaking in generalities, Defendant
Krasner used the WBUR interview as a platform to label Plaintiff Carpenter and other
older Prosecutors as "racists," and to brand the "younger generation" of Prosecutors as
non-racist and fair-minded.  However, Plaintiff Carpenter achieved a remarkable record
of success as a career Prosecutor in the DA's Office, and was not terminated for cause.

62.     Another example of Defendant Krasner's ageist mentality came to light on
May 4, 2018, when he participated in a roundtable discussion in Philadelphia, and
referred to "generational shifts that are meaningful" while declaring that "generationally
[we are] moving to a better place" because of the "young folks."

63.     To further show his age-related bias, Defendant Krasner stated in the May
4, 2018 roundtable discussion that he was "trying very hard, right now, to recruit into our
office . . . some of the best young graduates from law school that we can find."

64.     Further proof of Defendant Krasner's discriminatory views of older
Prosecutors was revealed in a podcast interview he gave on May 25, 2018, to "The Voice
of San Diego." When asked in that interview if he got "much in the way of pushback"

from "career prosecutors" after he was sworn in as District Attorney, Defendant Krasner,

speaking in sweeping generalities, responded in part by stating:

> \* "So, <u>once we got that core group to move on</u>, and we
> did it frankly, as humanely as you can, <u>we found that
> among the younger attorneys there was a whole lot of
> excitement and interest</u> because they have heard of
> 'mass incarceration.'"

> \* "They [referring to younger attorneys] <u>believe in racial
> justice</u>, and when there was resistance, it was amongst
> some, not all, <u>of the more senior attorneys, whose training
> had been done in a certain way.</u>"

> \* "They [referring to the more senior Prosecutors] still
> had that sports mentality that they were trying to
> maximize everything rather than a balanced mentality
> that bent towards justice."

> \* "<u>Fascinating generational dynamic here,</u> it seems, for
> whatever reason, <u>younger people are a lot more cognizant
> of the reality of the racist system.</u> . ."

(Emphasis added).

65.     In the May 25, 2018 podcast interview, Defendant Krasner heaped praise

on young Prosecutors as a group, and again asserted his false premise and biased theory

that older Prosecutors like Plaintiff Carpenter were part of a "racist system" and were

unable to embrace change.

66.     Defendant Krasner's public comments made after the January 2018 purge

further support Plaintiff Carpenter's claim that he was targeted for termination by

Defendants because of Defendant Krasner's stereotyping of older Prosecutors and his

blatant favoritism of young Prosecutors.

**G.     From the Summer of 2018 to the Present, Defendants Have Hired Many Young ADA-Prosecutors to Fill Vacancies in the DA's Office**

67.     After the January 2018 purge that resulted in the force-out of Plaintiff Carpenter and other older Prosecutors, many Prosecutors voluntarily resigned from their employment in the DA's Office.

68.     Commencing in or around the summer of 2018, and continuing thereafter, Defendant Krasner has hired many young ADA-Prosecutors who are recent law school graduates to fill vacancies in the DA's Office created by the said purge and/or the spate of resignations that followed it.

69.     The ages of Defendant Krasner's recent hires is further reflective of his desire to have a DA's Office that is dominated by young Prosecutors.

**H.     The Hiring by Defendant Krasner of a Small Number of Older Attorneys Does Not Undermine Plaintiff Carpenter's Claim of Age Discrimination**

70.     Prior to being elected as District Attorney, Defendant Krasner announced publicly that his goal was to target older Prosecutors for termination and to fill the DA's Office with young Prosecutors.

71.     Defendant Krasner's plan was implemented, in part, when in early January 2018 he demanded the resignations of Plaintiff Carpenter and other older Prosecutors, while retaining many substantially younger, less experienced Prosecutors.

72.     In an attempt to counter Plaintiff Carpenter's claims of age discrimination,

Defendants have asserted that in Defendant Krasner's first year in the office as District Attorney, he hired approximately seven older attorneys to fill what he claimed were important positions within the DA's Office (collectively, the "Older Hires").

73.     The Older Hires were hired by Defendant Krasner mainly to fill administrative and supervisory positions; and most if not all of them were not hired as line Prosecutors - the specific job category singled out by Defendant Krasner in his public comments as the targets of his discriminatory scheme.

74.     Accordingly, the Older Hires are not Plaintiff Carpenter's Comparators.

75.     Plaintiff Carpenter's true Comparators include the many substantially younger, less experienced, less qualified Prosecutors who remained in the DA's Office and in the Family Violence & Sexual Assault Unit after Plaintiff Carpenter was forced out pursuant to Defendant Krasner's plan to pack the DA's Office, including the Family Violence & Sexual Assault Unit, with a new generation of young Prosecutors to replace older Prosecutors.

## COUNT I
## PLAINTIFF JAMES CARPENTER v. DEFENDANT CITY OF PHILADELPHIA
## ADEA

76.     Plaintiff Carpenter incorporates by reference all of the allegations of paragraphs 1 through 75, above, as if set forth fully and at length herein.

77.     Plaintiff Carpenter's age was a determinative factor in the City's decision to demand his resignation on January 5, 2018, under threat that he would be fired if he did not resign.

78.     Plaintiff Carpenter's age was a determinative factor in the City's decision to make January 5, 2018 his last day of employment with the City, thereby causing his employment to be voluntarily terminated.

79.     The said decisions by the City were in willful violation of the ADEA in that the City knew or showed reckless disregard for whether the conduct was prohibited by law.

80.     As a result of the City's violations of the ADEA, Plaintiff Carpenter has suffered and will suffer a loss of wages, salary and other employee benefits that he would have earned and received from the City; and he is therefore entitled to an award of back pay for actual damages to compensate him for the lost wages, salary and other benefits he has suffered and will suffer from January 2018 until the time of trial.

81.     As a further result of the City's violations of the ADEA, Plaintiff Carpenter's loss of wages, salary and employee benefits may extend beyond the time of trial, in which case he would be entitled to an award of front pay for actual damages equal to the present value of the wages, salary and benefits he will lose during the applicable period after trial.

82.     Because the City's violations of the ADEA were willful, Plaintiff Carpenter is entitled to an award of liquidated damages equal to the amount of his actual economic losses.

83.     As a further result of the City's violations of the ADEA, Plaintiff Carpenter has incurred and will incur attorney's fees and costs.

84.     As a further result of the City's violations of the ADEA, Plaintiff Carpenter is entitled to equitable and declaratory relief including, if such relief is feasible, reinstatement to the employment of the City with all attendant benefits and seniority rights.

**COUNT II**
**PLAINTIFF JAMES CARPENTER v. DEFENDANT CITY OF PHILADELPHIA**
**PHRA**

85.     Plaintiff Carpenter incorporates by reference all of the allegations of paragraphs 1 through 84, above, as if set forth fully and at length herein.

86.     Plaintiff Carpenter's age was a motivating and/or determinative factor in the City's decision to demand his resignation on January 5, 2018, under threat that he would be fired if he did not resign.

87.     Plaintiff Carpenter's age was a motivating and/or determinative factor in the City's decision to make January 5, 2018 his last day of employment with the City, thereby causing his employment to be involuntarily terminated.

88.     As a result of the City's violations of the PHRA, Plaintiff Carpenter has suffered and will continue to suffer a loss of wages, salary and other employee benefits that he would have earned and received from the City; and he is therefore entitled to an award of back pay for actual damages to compensate him for the lost wages, salary and other benefits he has suffered and will suffer from January 2018 until the time of trial.

89.     As a further result of the City's violations of the ADEA, Plaintiff Carpenter's loss of wages, salary and employee benefits may extend beyond the time of trial, in which case he would be entitled to an award of front pay for actual damages

equal to the present value of the wages, salary and benefits he will lose during the applicable period after trial.

90.    As a further result of the City's violations of the PHRA and the consequences of the City's unlawful termination of his employment, Plaintiff Carpenter has suffered and will continue to suffer anxiety, emotional distress, mental anguish, loss of self-esteem, loss of self-confidence, inconvenience, embarrassment, humiliation, and harm to his reputation.

91.    As a further result of the City's violations of the PHRA, Plaintiff Carpenter has incurred and will incur attorney's fees and costs.

92.    As a further result of the City's violations of the PHRA, Plaintiff Carpenter is entitled to equitable and declaratory relief including, if such relief is feasible, reinstatement to the employment of the City with all attendant benefits and seniority rights.

## COUNT III
## PLAINTIFF JAMES CARPENTER v. DEFENDANT LAWRENCE S. KRASNER
## PHRA

93.    Plaintiff Carpenter incorporates by reference all of the allegations of paragraphs 1 through 92, above, as if set forth fully and at length herein.

94.    At all relevant times, Defendant Krasner was and acted as a "person," an "employer," and an "employee" as defined by the PHRA, and specifically, 43 P.S. §955(e).

95.     As District Attorney for the City, Defendant Krasner at all relevant times had and acted in a supervisory and managerial role with respect to the acts and practices of age discrimination alleged herein.

96.     At all relevant times, Defendant Krasner shared and acted in conformity with the discriminatory intent and purpose of Defendant City to cause Plaintiff Carpenter's employment with the City to be involuntarily terminated in violation of the PHRA.

97.     Defendant Krasner aided, abetted, incited, compelled and/or coerced the City to cause Plaintiff Carpenter's employment with the City to be involuntarily terminated because of his age in violation of the PHRA.

98.     As a result of Defendant Krasner's violations of the PHRA, Plaintiff Carpenter has suffered and will suffer a loss of wages, salary and other employee benefits that he would have earned and received from the City; and he is therefore entitled to an award of back pay for actual damages to compensate him for the lost wages, salary and other benefits he has suffered and will suffer from January 2018 until the time of trial.

99.     As a further result of Defendant Krasner's violations of the PHRA, Plaintiff Carpenter's loss of wages, salary and employee benefits may extend beyond the time of trial, in which case he would be entitled to an award of front pay for actual damages equal to the present value of the wages, salary and benefits he will lose during the applicable period after trial.

100.   As a further result of Defendant Krasner's violations of the PHRA, Plaintiff Carpenter has suffered and will suffer anxiety, emotional distress, mental anguish, loss of self-esteem, loss of self-confidence, inconvenience, embarrassment, humiliation, and harm to his reputation.

101.   As a further result of Defendant Krasner's violations of the PHRA, Plaintiff Carpenter has incurred and will incur attorney's fees and costs.

102.   As a further result of Defendant Krasner's violations of the PHRA, Plaintiff Carpenter is entitled to equitable and declaratory relief including, if such relief is feasible, reinstatement of the employment of the City with all attendant benefits and seniority rights.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff James Carpenter prays that the Court grant him the following relief:

(a)   Declaring that the acts and practices complained of herein to be in violation of the ADEA and the PHRA;

(b)   Enjoining and restraining the violations by Defendant City of Philadelphia and Lawrence S. Krasner of the ADEA and the PHRA;

(c)   Granting a judgment in favor of Plaintiff James Carpenter and against Defendants City of Philadelphia and Lawrence S. Krasner on the issues of liability;

(d)   Awarding back pay to Plaintiff James Carpenter for lost wages, salary and employee benefits that he has suffered and will suffer from the time

25

Defendants caused the involuntary termination of his employment with the City until the time of trial;

  (e) Awarding Plaintiff James Carpenter front pay for lost wages, salary and benefits he will suffer for a reasonable period of time after trial;

  (f) If feasible, as an alternative to front pay, ordering that Plaintiff James Carpenter be reinstated to the employment of the City with all attendant benefits and seniority rights;

  (g) Awarding liquidated damages to Plaintiff James Carpenter under the ADEA in an amount equal to his actual economic losses;

  (h) Awarding Plaintiff Carpenter compensatory damages under the PHRA for anxiety, emotional distress, mental anguish, loss of self-esteem, loss of self-confidence, inconvenience, embarrassment, humiliation, and harm to reputation;

  (i) Awarding Plaintiff Carpenter reasonable attorney's fees and costs;

  (j) Awarding interest to Plaintiff Carpenter; and

  (k) Granting such other and further relief that the Court deems just and appropriate.

     SIDNEY L. GOLD & ASSOC., P.C.

    By: /s/ Sidney L. Gold, Esquire
      SIDNEY L. GOLD, ESQUIRE
      I.D. NO.: 21374
      1835 Market Street, Ste. 515
      Philadelphia, PA 19103
      215.569.1999
      Attorneys for Plaintiff

DATED:  02/19/20

## VERIFICATION

I hereby verify that the statements contained in this **Complaint** are true and correct to the best of my knowledge, information and belief. I understand that false statements herein are made subject to the penalties of Title 18 Pa. C.S.A. §4904, relating to unsworn falsification to authorities.

DATE: 2-17-20

JAMES CARPENTER, PLAINTIFF